Good morning, Your Honors. May it please the Court, Ray Halperin, on behalf of the petitioner who is in the court today. Counsel, could I just ask you to clarify something? We've received, I think, two 28J letters, maybe just one. But I want to understand at this point, what is it that the government has stipulated to that we don't need to talk about anymore? What are the points where there's no longer a dispute? Well, Your Honor, in this case, the government has continuously argued that a 212H was required because petitioner's crime was a CIMT and that it required a heightened standard. In the government's 28J letter, they finally stated that because of the intervening case law, Rendon v. Holder, it was not a CIMT and thus no waiver was required. Which leads us to my 28J letter, Your Honors, in which I said that the issue then before the court is whether petitioner ever even had an opportunity to file a straight-out 485 adjustment application, which he did not. I thought he had. No, he hadn't? No, because the 212H is a waiver of inadmissibility, and that's under application 601A. So unless he passes that hurdle of getting that application granted, the adjustment of status application never gets adjudicated. But I thought the I.J. went on to say that, you know, at the end of the decision, as an alternative, that if he had, that if there were an adjustment of status application, I guess that's what he said, that he would not exercise, in light of his record and his testimony, that he would not exercise discretion to grant an adjustment of status. No, Your Honor. No. Your Honor, that's not what he said. What did he say at the end of his decision? He said that since the 212H waiver, he did not find extreme and unusual hardship. Even in his discretion, he would have denied that application. And that application, Your Honor, was referring to the 212H application, which is filed under 601A. He never made any express finding that he would deny a 485 application, which didn't require a waiver. In fact, there was no determination at all that a 485 application without a waiver would be denied. Does a 485H application? 485, yes, Your Honor. Does that require an exercise of discretion? That does require an exercise of discretion. However, it's a different exercise of discretion standard. The 485 application, straight out without a waiver, there's a presumption that discretion is warranted. So it's different than the 212H. How do we deal with that, though? When the Attorney General or his agents has discretion, do we have jurisdiction to hear that? Your Honor, he didn't exercise discretion here. This is the case where they did not exercise discretion because he didn't have the correct application in order to exercise discretion. There's a BIA-published opinion, matter of array. That is the controlling opinion. That opinion presumes that relief is warranted. What the government had us do was file a 212H application. Then they required not only extreme hardship but exceptional and extreme unusual hardship. That was not before the immigration judge. Are you saying that the relief that your client is entitled to from your perspective was not even before the BIA? Is that what you're saying? It was not before the BIA because the BIA – What are we talking about today? Today we're talking about that the case needs to be remanded because a 485 application without the requirement of the heightened standard was before the judge. And we're arguing on also – But it's not before us, is it? It is before – 485? Yes, Your Honor, because I've consistently argued that no 212H waiver was required and no heightened standard was required. This should have been just adjudicated as a straight-out 485. I respect that. I get your point about that. Some of what the government has conceded makes that the case. But what I'm struggling with is the fact that you seem to be saying that the proper vehicle here is a 485. That was apparently not filed – let me put it this way. I don't know that it was filed with the IJ. I don't think it was before the BIA, right? Your Honor, both applications were in front of the IJ and in front of the BIA. They go together. Basically, in order to get the 485 – But did the BIA rule on that? The BIA found that he didn't meet his burden for the 212H, which now we're saying wasn't even required. So our position is he – What do we do with the 485? Did they treat the 485 issue? Well, it ultimately gets denied because he didn't – You just said a few minutes ago they hadn't even filed it. No, they did – Your Honor, it's filed together. The application to adjust status is filed when there's an issue regarding a crime of moral turpitude in it. I'm looking for the part of the IJ's decision where he talks about discretion. Correct. All right. Where was that? What page is that? Page 17, 151 of the record, of the excerpt. Your Honor, and he's referring – Page 17 of the decision. Right. He says, even if this Court did not find that he didn't meet his burden of establishing the required hardship level to be eligible for a waiver under Section 212H, the Court would nonetheless deny this application in the exercise of discretion. Correct. He's talking about this application, the 212H. He's talking about the 212H, right? 212H is what now the government is saying was not even necessary. Okay. The difference between – If that's the case, though, I'm still struggling with the fact that we don't have a ruling on the 485, right? Well, the judge said that basically what he said, I'm going to deny the application. So he ended up denying everything because he couldn't reach the second part. So do we assume that he impliedly ruled on the 485 as well? So we assume that he denied it because he didn't have a statutory eligibility, not discretion. Well, see, that's what I'm troubled with. Right, not discretion. 485 is discretionary, right? 485 is discretionary, but when you – How can it be statutorily required if it's discretionary? Because when you can't meet the burden of the extreme and unusual hardship, then you don't get to the adjustment of status. He did get to discretion, but you say it's a different type of discretion. The wrong discretion. First of all, he required extreme and exceptional unusual hardship because of that. The adjustment – Hold on a minute. Hold on a minute. So he was ruling on the 212H when he did that? Correct. Okay. And then I think what Judge Smith is asking about is, isn't it correct, then, that there was never a ruling on the other application? Correct, Your Honor. And the other application is a presumption of discretion. I mean, a straight-out adjustment of status with no waiver is a presumption. The judge didn't have an opportunity because the government kept arguing that he was required to submit a waiver. How is that before us, then? If you're right, if you're right, then they have only ruled on the one issue, the 212H, and they haven't ruled on the – what would you call the other one? Well, he denied the adjustment because the underlying waiver was denied. So it is before this Court because both applications are denied. Now, I will go into my second point. Wait a minute. Wait a minute. You see, wait a minute. If you go to the very end on page 20 of the IJ's decision, right before it says orders, the IJ says, again, then on consideration of all the factors, both positive and negative, this Court finds the respondent does not deserve a grant of adjustment of status in the exercise of this Court's discretion. Accordingly, for that reason, again, the respondent's application will be denied. Correct, Your Honor, but he didn't evaluate. He denied the adjustment. And I will make another point. So then if you go to the BIA's decision, hold on. If you go to the BIA's decision, they say, they say, we adopt and affirm the immigration judge's well-reasoned determination that the respondent did not meet his burden to establish a warrant's relief as a matter of discretion. Your Honor, again, they did the discretion based on the 212H, which does, I do want to point that out as well. In this Court's published opinion, Torres v. V. Lynch, okay, that went to whether it's a violent or dangerous crime. And this Court specifically stated that where the correct legal standard is applied, the Court would not have jurisdiction. However, in this case, the correct legal standard was not applied. Let me ask you this. In exercising discretion on an application for adjustment of status, what factors are important? Your Honor, it's a balancing and there's a presumption when you're dealing with the standard. Presumption. You keep saying a presumption. Presumption of what? Of a grant of your case. So if I went to court right now, immigration court, and all I had was my 45 application, I don't need a waiver for anything, there's a presumption that the case will be granted. Here in this case, Your Honor, here they require exceptional and unusual and there's a presumption for denial. Hold on, hold on, hold on. Okay, hold on. So you start out, let's just assume you had an adjustment application. You start out with this presumption. What does the IJ have to balance in order to say that the government has rebutted the presumption? He has to balance all of his equities as well as all of the negative factors. So the negative factors would be sort of the same things that the IJ identified here? No, Your Honor, because in this case what the IJ said was that he had to find exceptional and extremely unusual hardship. So that was the balance. Look, what Pius is asking you, is there any difference in the factors other than the presumption? There are differences in the factors, Your Honor, because when you look at the hardship that you are required, the negatives are when the waiver comes, the negative is considered an adverse negative and there's a presumption to deny the case in the exercise of discretion. That's the difference in presumptions. Right. I said other than the difference in presumptions, you're weighing the same factors. You're weighing the same factors, but you're giving different weight to them because of the presumption. Correct, Your Honor. Okay, that's your argument. All right. And my other argument, Your Honor, again, this should not have been, the discretionary factors should not have been exceptional and unusual hardship. No, they're not. He got through with that argument about exceptional and unusual, and then he said in any event, as a matter of discretion, I would not grant the relief. I don't believe that was the case. The third point, Your Honor, is that there was extreme bias in this case by the immigration judge. If you look at the case, the IJ stood in moral judgment of petitioner. The government counsel, I prepared my case, the government counsel prepared their case. Immediately, the judge started badgering the petitioner, started asking him, if you notice, the judge's questions were twice as many as the government. Is that illegal? Absolutely, Your Honor. When you badger, when he told you. Counsel, may I offer a bit of advice? Listen to what a judge asks you, think about it, and then give us an answer. You're just talking and talking. You're not listening to us. What case law, what rule can you cite that says that the IJ cannot question the petitioner? Your Honor, I apologize. There is no rule that says that the IJ cannot question. What case law do you rely upon? There is none, Your Honor, but there is. I'm just saying as a matter of personal opinion that it was improper. No, Your Honor. I'm quoting McGill-Divison v. Charles, 22 INA Decision 1362 BIA 2000, where the immigration judge cannot badger. A client cannot stand in moral judgment of a petitioner. And in this case, if you look at the record, he was acting as a prosecutor, trying to poke holes. Even the BIA made a comment that his comment that you're a walking crime wave, they took exception with that. And I'm going to reserve, if I may, the rest of my time, Your Honor, for rebuttal. Thank you. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. The government asks this Court to dismiss the petition for review. The only, only thing left before this Court is the immigration judge's discretionary denial of adjustment of status. Under the plain language of the Immigration and Nationality Act, this Court's well-established precedent, this Court lacks jurisdiction to review that discretionary denial. Let's assume for a minute that they're arguing a colorable constitutional or statutory question, in which case we have jurisdiction. What's your response to the remaining issue in terms of what the IJ said and what the BIA adopted of what the IJ said? The immigration judge went through, as was discussed earlier, pages 17, 18, 19, 20 of the immigration judge's decision. The immigration judge discusses the positive, the negative factors, and ultimately concludes that the negatives outweigh the positives, that this individual does not merit adjustment in the exercise of discretion. Is there a different standard, as counsel said, where there's a presumption in one case and not a presumption in the other, in making the discretionary decision? There are a few things that I would take exception with on behalf of the government with what counsel has said. The standard for a waiver requires a certain hardship. If the crime meets a certain standard, it requires a heightened evaluation. When you get to the discretionary decision after that. Positive versus negative, Your Honor. It's the classic, as was noted earlier, it is the classic exercise of discretion, and that's exactly what the immigration judge did here. Petitioner is complaining that that never took place. That's factually wrong. But you're saying there's a presumption in favor of the applicant if it's not the case of, with the previous, I'm not even sure, if it's not a 212H or C or whatever it is that you're exercising discretion about, that there's. . . You're essentially starting with a cleaner slate, Your Honor. You're starting with adjustment. The immigration judge does a great job of talking about the posture of this case. Individual comes in. If the individual is inadmissible, then the individual needs a waiver, depending on the nature of the crime. The waiver may have to, the individual may have to meet a different standard. But then aside from all that, you get back to the underlying discretionary determination, weighing the positives and the negatives as to whether the individual merits a favorable exercise of discretion and a grant of adjustment. That's what happened here. Petitioner is complaining. Are you saying that there's no presumption for the, during the exercise of discretion portion of the issue, that there's no presumption in favor of the applicant? I don't mean to imply that, Your Honor. What I'm saying is the immigration judge in this case did exactly what the immigration judge was supposed to do, which is starting with the question of . . . But what you're saying, you don't say that. You're not saying that in one case there's a presumption in the applicant's favor? I'm not challenging that contention by Petitioner. I would note, however, they've never made that argument before today, Your Honor. What is the presumption and what's the basis of the presumption? In immigration? She's alleged there's a presumption in her client's favor. Do you agree there is such a presumption? I don't contest that, Your Honor. On what is it based? Based on if in this case, to get down to this case, if Mr. Abbas was not inadmissible, if he were admissible, then we would get to the straight question of does he deserve adjustment status in the exercise of discretion. Okay. But in this case, is there a presumption that applies based on a 485 situation? In this case, I don't think we get to that question, Your Honor, because in this case . . . I assume we do.  Where does the presumption come from? I think it comes from the . . . I want to be careful, Your Honor. I don't regularly practice in the immigration courts, but you're talking about a situation where an individual would go in admissible as opposed to inadmissible, be filing a 485, an application for adjustment of status, and the immigration judge is going to balance the positives and the negatives. Okay. But you're not answering my question. There's been a statement that there is a presumption in favor, presumably, of the alien in this situation. I'm asking, is that based on a regulation? Is it based on a case? Is it based on a statute? What's it based on? I understand. I apologize, Your Honor. If I understand your question, I believe that is correct. I would want to double-check that, and that's just being perfectly candid. If you think there is one, you just don't know where it comes from. I would want to double-check that, yes, Your Honor. Do you think there is one? I think he's presumed to come in . . . Based on your understanding? That would be my understanding. I would need to double-check that, Your Honor. I don't . . . If there is a presumption, do you think that in exercising his discretion, starting at page 20, that the court, the IJ, afforded the applicant that presumption? Yes, Your Honor. And I think it starts, actually, a few pages earlier. Page 20 is the last page of the immigration judge's decision. It starts at the bottom . . . I'm sorry. Page 17 starts. Page 17. Starting at page 17. And what happens sort of . . . Just a minute. They both have the same problem. Sorry, Your Honor. Don't wait for the questions. Starting at . . . You all should go to the racetrack and get right out of the gate. Starting at page 17, where the IJ exercises his discretion, do you think in that exercise of discretion that he afforded the applicant the presumption? Yes, Your Honor. And where would you find that? It does not explicitly say that, but it certainly doesn't explicitly say the opposite. And I think in order to make the case that Petitioner is trying to make for the first time today, not in a brief to the immigration court, not in a brief to the board . . . Well, a lot of things happen with these 28J letters, apparently. I understand. I don't think it's . . . I apologize if I missed it. I don't think it was mentioned in the 28J letters either, Your Honor. I think this is a new argument that Petitioner's counsel is putting forward today. The immigration judge does a very thorough job here, going through all of the different issues that were in front of the immigration court at that time. And ultimately, when we get towards the bottom of page 17, pivots from talking about a waiver and says, even if you didn't need that waiver, now we're going to talk about adjustment of status. Positives versus negatives, and the immigration judge ultimately reaches the conclusion that Mr. Abbas doesn't merit a favorable exercise of discretion. That's exactly . . . So it's your position that even though 212H is not before us now . . . Yes, Your Honor. You're saying that what the immigration judge says at the bottom of page 17, top of page 18 of the IJ opinion, that that applies equally to 485. Is that right? Yes, Your Honor. And that we are to assume that, but for the failure to insert that terminology in there, that number, that he has evaluated the adjustment of status request also under 485 and denied it based upon the criteria that the court set forth on 17 and 18. Is that right? I would just expand that a little bit. 17, 18, 19, and 20, Your Honor. The decision goes on to talk about positives and negatives. Mr. Abbas gets the full consideration. The immigration judge's decision, if it had stopped at the bottom of page 17, then Petitioner's Counsel would be exactly right, and we'd be asking this court to remand the case. But the immigration judge went on, and the board similarly talks about the other issues that were before the board at the time and then pivots and says, in the end, we agree, we adopt the immigration judge's well-reasoned decision. Mr. Abbas is complaining that he never got an evaluation of his adjustment claim. That ignores pages 17, 18, 19, and 20 of the immigration judge's decision. It ignores the board's statement that it is adopting and affirming the immigration judge's decision. He got exactly the evaluation that he was supposed to get. Let me ask you another question. I know that if this crime were a crime of moral turpitude or a serious violent felony or any of that, the government would not be particularly interested in taking another look at the case. But this is a case in which we're now down to the issue of discretion. And the immigration judge's decision, which is thorough, as you say, points out a number of things about his mother having had cancer, being in a very fragile mental condition, being very dependent on this son who was a teenager when these things happened, who came here when he was 11 years old from Egypt. And the immigration judge says, you know, I know that they won't ever be able to meet again in Egypt, nor will they be able to meet this mother and son in the United States. He says, but somehow maybe they can all go to some third country and hold a reunion sometime. And for a mother that's that dependent, as he describes it, for her physical and mental well-being on this son and what he does to support her, now that you've cleared up some of the disagreements, previous disagreements about what the nature of this crime was, do you see any reason that the government wouldn't be willing to go to mediation and discuss with the staff? We have a very strong mediation program, which the Immigration Service, I guess it's now Homeland Security, takes advantage of with some regularity. Do you have any reason to think they wouldn't be willing to go to mediation and talk more about what can be done with this mentally fragile mother who would never otherwise be able to see her son again? Your Honor, I can assure this Court that this case has been fully vetted in terms of whether there's a possibility of an exercise of prosecutorial discretion. If the Court believes it would be appropriate to refer this case to mediation, I can certainly take this case back to the Department of Homeland Security, but I don't want to mislead the Court. This case has been fully vetted for the exercise of prosecutorial discretion. I'd like, if possible, to turn briefly to the accusation with regard to bias by the immigration judge. That is, as Your Honor noted, a potentially colorable claim that this Court could exercise jurisdiction over. The record, however, tells a very different story. There was one, one intemperate remark, as the Board noted, as our brief noted, one intemperate remark by the immigration judge. I would urge this Court to consider that remark in the context of what was going on in immigration court and in the totality of the circumstances for this case. Mr. Abbas came into immigration court and told an unbelievable story. That's not my words, it's not the immigration judge's words, it's Mr. Abbas's words. He says to the immigration judge, yeah, I know this story is hard to believe. His counsel says, pretty unbelievable. And Mr. Abbas continues to push this unbelievable story. He's questioned. He's questioned on cross-examinations. He's questioned by the immigration judge. His testimony is done. They start testimony by another witness. The case has to be continued. At the continued proceedings, three months later, this immigration judge, who Petitioner would have you believe is so biased against Mr. Abbas, the immigration judge is asked to allow Mr. Abbas to retake the stand, to get a second bite at the apple to testify. Not in rebuttal, just a second bite at the apple to testify. Over the government's objection, the immigration judge allows that testimony. And I would respectfully submit that any allegation of bias is overcome by the immigration judge allowing Mr. Abbas to take the stand again. And, in fact, Mr. Abbas takes the stand and says, yes, that unbelievable story that I told you before was not true. I came in and I lied to the tribunal. I was afraid for various reasons, but I lied to the tribunal. The immigration judge, as was noted earlier, is not prohibited from asking questions. In fact, the statute specifically allows for the immigration judge to ask questions, and that's what this immigration judge did. And there was one intemperate remark, but taken in the total context, the totality of the circumstances, we would urge this court to reject that argument of bias and then to dismiss the petition for review. If I could return very briefly to Your Honor's question about the presumption, I apologize if I didn't answer it immediately. I was a little taken aback because I have not seen that argument previously, and before I can speak to it, I would need to go check. If the court wants the government to submit further briefing on that matter, I'd be happy to. I apologize. Hearing it for the first time today, I was not prepared to respond in the detail that I think this court deserves. My only question is that in our deliberations, if there's a presumption, we need to know it. Counsel has referred to one and referred to a case, I think it was a BIA case or something like that. I'm not familiar with that particular case, and I don't think it was cited in the brief, but I'm not sure. If there is one, I'd like to know what it is. If there isn't, then that too. I see my time has expired. If I could just answer briefly, Your Honor, again, you're talking about presumption perhaps applying. You're not prepared to answer the question. And would be happy to submit further briefing as the court would request, Your Honor. Thank you, Counsel. Thank you, Your Honor. Your Honor, that case actually is the matter of array. It is the only published case on the BIA for a 485 application, and it states that where there are adverse factors present, favorable factors will be considered as countervailing factors, meriting a favorable exercise of discretion. In summing up, Your Honor, not only array, A-R-A-I, 13 INN Decision 494, BIA 1970. That is the controlling case. And that says that there's a presumption. Yes, Your Honor. Now, here in this case, the discretion that was afforded, there is this matter of array, which is the controlling case. There's extreme hardship, and there's exceptional and unusual extreme hardship. When you get past that and you then get to discretion, even if there's extreme hardship, they don't have to do it. It's still discretion. When you get down to discretion, that's what they exercise here. And it's something we don't have the jurisdiction to review unless it's a legal error. And it is a legal error, because the discretion that was determined was based on exceptional and unusual hardship. That was the discretion. That's when he considered all the factors in his discretion. He denied it, finding that he didn't meet the exceptional and extremely unusual hardship. I don't think that's right. I think if you find that you do meet it, then you can exercise discretion. If you don't meet it, you're not eligible. He's found that he did not meet statutorily the extreme and unusual hardship, and in his discretion, he wouldn't meet that burden. So he did jump to that burden, and that's how it is in immigration court. Okay. Thank you, Judge. Thank you, Your Honors. This argument will be submitted.
judges: Reinhardt, Paez, M. Smith